```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
DOUGLAS H. SANDERS,

                          Plaintiff,

        -against-

WB KIRBY HILL LLC, TRJ SERVICES, LLC
d/b/a COAST OAK GROUP, BERNARD M.
JANOWITZ, and SAMMY I. JANOWITZ,

                          Defendants.
----------------------------------------------------------X
```

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  NOV 14 2017  ★

LONG ISLAND OFFICE

MEMORANDUM AND ORDER

CV 16-4596
(Wexler, J.)

APPEARANCES:

> BARSHAY SANDERS, PLLC
> BY: Craig B. Sanders, Esq.
> 100 Garden City Plaza, Suite 500
> Garden City, New York 11530
> Attorney for Plaintiff
>
> STEVEN SIEGEL, P.C.
> BY: Nathan V. Bishop, Esq.
> 123-12 82nd Avenue
> Kew Gardens, New York 11415
> Attorneys for Defendants Bernard M. Janowitz and Sammy I. Janowitz

WEXLER, District Judge:

This case arises out of transactions between the parties whereby plaintiff Douglas H. Sanders ("plaintiff" or "Sanders") purchased a piece of property and defendants built a home on that property pursuant to contract. Plaintiff alleges that the home as built did not comply with the requirements set forth by the non-party Village of Muttontown (the "Village"), and thus defendants WB Kirby Hill LLC ("WB Kirby") and TRJ Services LLC d/b/a Coast Oak Group ("Coast Oak") breached the contract. He further alleges that the individual defendants, Bernard M. Janowitz ("Bernard J.") and Sammy I. Janowitz ("Sammy J.") (collectively, the "Janowitz defendants"), made various misrepresentations constituting fraud. Currently before the Court is

the Janowitz defendants' motion to dismiss. For the reasons set forth below, the motion is granted.

## I. BACKGROUND

### A. Factual History

The factual allegations regarding the moving defendants are summarized for the purpose of this motion. This case involves plaintiff's purchase of a lot located at 6 Kingwood Court, Muttontown, New York, in an area referred to as the Stone Hill development, and the circumstances leading to the building of his home on that lot.

#### 1. The parties

On February 23, 2010, Sanders and WB Kirby[1] entered into a purchase agreement for the land for $1.4 million. Am. Compl. ¶18 & Ex. 1 ("Purchase Agreement"). The Purchase Agreement was signed by plaintiff and WB Kirby "By Bernard Janowitz." That same day, WB Kirby entered into a Construction Agreement with Sanders to build a home on the land. Am. Compl. ¶19 & Ex. 2 (the "Construction Agreement"). That agreement was also signed by plaintiff and WB Kirby "By Bernard Janowitz, Builder." Plaintiff makes no allegations regarding Bernard J.'s signature on these documents, but rather claims that there is "no contract" between Bernard J. and himself. *Id.* ¶158. He also alleges that Bernard J. was neither an owner nor principal of WB Kirby, and only held himself out as a principal of that entity. On a single occasion, plaintiff refers to Bernard J. as "the developer." Am. Compl. ¶72.

---

[1]Plaintiff alleges that Coast Oak is a successor in interest to WB Kirby and has agreed to indemnify it for any liabilities arising from the construction of homes in the Stone Hill development. Am. Compl. ¶¶ 10-11. There are no separate allegations regarding defendant TRJ Services, LLC d/b/a Coast Oak Group. As the claims against the non-Janowitz defendants are not at issue on this motion, recitation of particular allegations regarding them is limited.

Sammy J.'s role in these events is unclear. Plaintiff alleges Sammy J. was not an owner or employee of WB Kirby and that Sanders had no contractual relationship with him. Plaintiff claims that Sammy J. "falsely represented and held his father out as a principal of WB Kirby." Am. Compl. ¶29. Presumably, Sammy's "father" is Bernard. In addition, Sammy J., in some undesignated capacity, "personally picked the pavers and supervised the design of the retaining wall." *Id.* ¶85.

2. Allegations leading to the execution of contracts

Plaintiff generally alleges that in January 2010, prior to his purchase of the property, Bernard J., knowing that plaintiff wanted to build an oversize, 6000 square foot home with room for a pool as of right, Am. Compl. ¶35, provided drawings and oral assurances on the suitability of the land for both the larger home and the pool, *id.* ¶36, and "fraudulently misrepresented and/or failed to advise Sanders that the larger home would require varriances [sic] and potentially would violate Village rules and ordinances despite knowing same." *Id.* ¶37. Plaintiff further alleges that Bernard J. made additional fraudulent representations including, *inter alia*, that he would handle filings with the Village, that there would be no issues with plaintiff's specifications, that no variances would be required, and that the specific lot purchased by plaintiff could accommodate all his requirements without variances. There is no indication regarding when, where, or how these representations were made.

Sammy J. also allegedly made representations to plaintiff such as, *inter alia*, that no variances would be required, and that there would be no issue with the Village regarding either the size of the home or the addition of a pool as of right. Plaintiff alleges that both Janowitz defendants knew at the time of plaintiff's purchase that the Village would not approve the larger home and would not approve a pool as of right. Additionally, the Janowitz defendants

3

fraudulently conveyed "inaccurate information from the architect to Sanders" to convince the latter to enter into the purchase and construction agreements. Am. Compl. ¶48.

2. Post-contract allegations

The Construction Agreement on February 23, 2010 provided, *inter alia,* that WB Kirby would furnish all labor, materials, and equipment necessary to construct the home, and that WB Kirby "shall obtain and pay for all Certificates of Occupancy, Compliance and/or Completion for the Improvements as may be required by the applicable governmental authorities..." Am. Compl. ¶65. Sanders paid WB Kirby $1.6 million as required by the Construction Agreement, plus an additional $330,000 in change order charges. WB Kirby delivered the Certificate of Occupancy to Sanders on or about September 21, 2011. *Id.* ¶92.

Sanders resided in the home from approximately March 2011 to August 2014. During his residency, Sanders installed landscaping, and a patio and pergola at the rear of the home. Upon the relocation of plaintiff's business, the property was placed on the market. On or about August 6, 2014, plaintiff entered into a contract of sale for the property in the amount of $3.415 million. In October 2014, the purchasers' attorney advised that their title company required approval from the Village building department for the patio, pergola, and landscaping. Sanders applied for a building permit to the Village for these improvements.

On or about April 2, 2015, Plaintiff received a comment letter from the Village advising him that the rear patio encroaches upon the required setback. Am. Compl., Ex. 4. The letter listed additional items to be addressed including a front masonry walk that required a permit, violations of a drainage easement and deed restricted area. Plaintiff alleges these conditions were built by WB Kirby in violation of the building permits it had obtained from the Village. He also alleges that the conditions were "fraudulently hidden" by WB Kirby and the Janowitz defendants. *Id.* ¶108.

4

On July 26, 2016, the Village issued another comment letter listing outstanding comments that had not been satisfied. Am. Compl., Ex. 5. In addition to items mentioned in the previous comment letter, the Village indicated that the Sanders home exceeds the maximum 35 foot building height as well as the site line equation from street level and would also require a variance. In the absence of the granting of a variance, Sanders claims that, in order to obtain a Certificate of Occupancy, he would be required to "remediate the violations by demolishing and rebuilding in accordance with [Village] requirements." *Id.* ¶118.

Sanders has filed multiple permit applications to date with the Village. In light of the requirements of the Village, Sanders was forced to terminate the sale of the property and refund the deposit. Am. Compl. ¶116. The Amended Complaint does not indicate when this occurred. Plaintiff further claims that the property is not marketable for sale or rent under its current condition, and that he lost several potential purchasers and renters who were afraid of the loss of quiet enjoyment created by the permitting process.

**B. Procedural History**

Plaintiff commenced this case against defendants alleging three causes of action -- breach of contract against both WB Kirby and Coast Oak, and fraud against the Janowitz defendants. Plaintiff amended his complaint to add claims of fraudulent inducement, and negligent misrepresentation against the Janowitz defendants. The Janowitz defendants move to dismiss all the claims alleged against them.

**II. LEGAL STANDARDS**

In considering a motion to dismiss made pursuant to Rule 12(b)(6), the court must accept the factual allegations in the complaints as true and draw all reasonable inferences in favor of the plaintiff. *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013) (citations omitted). The court determines "whether the 'well-pleaded factual allegations,'

5

assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

The determination of "whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S at 679. A determination of plausibility "depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011). A pleading that does nothing more than recite bare legal conclusions, however, is insufficient to "unlock the doors of discovery." *Iqbal*, 556 U.S. at 678-679; *see also Twombly*, 550 U.S. at 555 (holding that a "formulaic recitation of cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level."). In addition to the allegations in the complaint, the court may consider documents incorporated by reference in the complaint. Here, plaintiff incorporates by reference and attaches several documents to the amended complaint including the contracts and the two comment letters sent by the Village. As such, the Court considers those documents as well.

Rule 9(b) further requires that claims of fraud be pled with particularity. FED. R. CIV. P. 9(b). The Second Circuit has instructed that Rule 9(b) "requires the plaintiff to (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Nakahata v. New York–Presbyterian Healthcare Sys.*, 723 F.3d 192, 197 (2d Cir. 2013) (internal quotation and citations omitted). Simply stated, a plaintiff alleging fraud "must allege the time,

6

place, speaker, and sometimes even the content of the alleged misrepresentation." *Bruno v. Zimmer, Inc.*, No. CV 15-6129, 2016 WL 4507004, at *3 (E.D.N.Y. Aug. 26, 2016) (citing *Bertini v. Smith & Nephew, Inc.*, 8 F. Supp. 3d 246, 259 (E.D.N.Y. 2014) (citation and internal quotation marks omitted)). "Conclusory statements and allegations are not enough to meet the Rule 9(b) pleading requirements." *Musalli Factory for Gold & Jewellry Co. v. JPMorgan Chase Bank, N.A.*, 382 F. App'x 107, 108 (2d Cir. 2010) (summary order).

Rule 9(b) allows a defendant's state of mind regarding knowledge or intent to be averred generally. This is not, however, "a license to base claims of fraud on speculation and conclusory allegations" and "plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (internal quotation and citation omitted). A plaintiff may clear this hurdle by alleging "a motive for committing fraud and a clear opportunity for doing so" or, where no motive is apparent, "by identifying circumstances indicating conscious behavior by the defendant, though the strength of circumstantial allegations must be correspondingly greater." *Vaughn v. Air Line Pilots Ass'n*, 377 F. App'x 88, 90-91 (2d Cir. 2010) (internal quotation and citation omitted).

## III. DISCUSSION

### A. Fraud Claims

To state a fraud claim in New York, a plaintiff must allege "(1) a misrepresentation or a material omission of fact which was false and known to be false by defendant, (2) made for the purpose of inducing the other party to rely upon it, (3) justifiable reliance of the other party on the misrepresentation or material omission, and (4) injury." *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421, 668 N.E.2d 1370, 646 N.Y.S.2d 76 (1996)). A claim for fraudulent inducement requires that: "the defendant must have made a misrepresentation of a material fact,

7

that was known to be false and intended to be relied on when made, and that the plaintiff justifiably relied on that misrepresentation to its injury." *Amida Capital Mgmt. II, LLC v. Cerberus Capital Mgmt., L.P.*, 669 F. Supp. 2d 430, 444 (S.D.N.Y. 2009) (citing *Braddock v. Braddock*, 60 A.D.3d 84, 86, 871 N.Y.S.2d 68 (1st Dep't 2009)).

Plaintiff has alleged breach of contract claims against the other defendants, but only fraud counts against the Janowitz defendants. New York law is clear that "a restyling of contract claims does not create an independent claim for fraud and New York courts have dismissed such claims as duplicative." *Torchlight Loan Servs. LLC v. Column Fin., Inc.*, No. 11 Civ. 7426, 2012 WL 3065929, at *9 (S.D.N.Y. July 25, 2012). A plaintiff seeking to maintain a fraud claim in this situation must either "(i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC*, No. 11 CIV. 780, 2012 WL 1231775, at *10 (S.D.N.Y. Apr. 12, 2012) (quoting *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19–20 (2d Cir. 1996)). The Janowitz defendants seek dismissal of the fraud claims as duplicative of plaintiff's breach of contract claims brought against WB Kirby and Coast Oak. Plaintiff argues that the Janowitz defendants are not parties to either the Purchase Agreement or the Construction Agreement, and that any representations made by them are collateral to the contracts.

Plaintiff alleges that the misrepresentations made by the Janowitz defendants regarding the proposed size of the home and the suitability of the lot for the addition of a pool, both without additional variances, induced him to enter into a contract to purchase this particular property. In other words, the material misrepresentations made by the defendants "were as to the permitted uses of the unimproved property, on which Plaintiff relied in making the decision to purchase this particular lot in the first place," Mem. in Opp. at 13, and that but for their conduct,

he never would have purchased this piece of property. "New York law specifically recognizes causes of action for fraud in the inducement when the misrepresentation is collateral to the contract it induced." *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006); *see also Fierro v. Gallucci*, No. 06-CV-5189, 2008 WL 2039545, at *4 (E.D.N.Y. May 12, 2008) ("New York distinguishes between a promissory statement of what will be done in the future that gives rise only to a breach of contract cause of action and a misrepresentation of a present fact that gives rise to a separate cause of action for fraudulent inducement."). The Court finds that the Janowitz defendants' alleged misrepresentations regarding the suitability of the lot that induced plaintiff to purchase that particular piece of property are collateral or extraneous to the contracts.[2] Thus, a fraudulent inducement claim, if pled with the requisite particularity, could be stated against these defendants.

## B. Negligent Misrepresentation

In New York, "'[a] claim for negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information.'" *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 180, 944 N.E.2d 1104, 919 N.Y.S.2d 465 (2011) (quoting *J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144, 148, 863 N.E.2d 585, 831 N.Y.S.2d 364 (2007)). Whether a special relationship exists between the parties is a question of fact implicating factors such as (1) "whether the person making the representation held or appeared to hold unique or special expertise"; (2) "whether a special relationship of trust or confidence existed between the parties";

---

[2] The alleged misrepresentations by the Janowitzes concerning the failures to perform under the contract, however, constitute a duplicative claim barred under New York law as they "amount to nothing more than allegations of a misrepresentation of an intention to perform under the contract." *Yenrab, Inc. v. 794 Linden Realty, LLC*, 68 A.D.2d 755, 758, 892 N.Y.S.2d 105 (2d Dep't 2009).

and (3) "whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." *Kimmell v. Schaefer*, 89 N.Y.2d 257, 264, 675 N.E.2d 450, 454, 652 N.Y.S.2d 715 (1996).

Here, the allegations of the amended complaint fail to allege the existence of a special or privity-like relationship between plaintiff and either Janowitz defendant. The allegations in the amended complaint serve only to designate the roles these defendants do not play – neither was allegedly an owner or principal of the corporate parties. Bernard J. is referred to once in passing as a "developer," and there is no clue whatsoever as to Sammy J.'s part in the transaction. As the amended complaint does not contain any allegations that adequately describe Sanders' relationship with the Janowitz defendants, it fails to plead any basis for the imposition of duty upon either of them.

## C. Failure to Plead Claims with Particularity

All the causes of action asserted against the Janowitz defendants must satisfy the particularity requirements of Rule 9(b). *See generally CAC Grp., Inc. v. Maxim Grp., LLC*, No. 12 CIV. 5901, 2012 WL 4857518, at *5 (S.D.N.Y. Oct. 10, 2012) (noting that "Federal courts considering claims for negligent misrepresentation under . . . New York . . . law[] require such claims be plead with particularity under Rule 9(b)"), *aff'd*, 523 F. App'x 802 (2d Cir. 2013).[3] The Court finds that plaintiff's allegations regarding the allegedly fraudulent actions of the Janowitz defendants fail to satisfy Rule 9(b) as to all the claims brought by him against these defendants.

The amended complaint is rife with allegations regarding misrepresentations made by the Janowitz defendants, but those allegations are conclusory and lack any substance or specificity.

---

[3] While some courts have questioned whether the Rule 9(b) standard applies to *all* claims of negligent misrepresentation, *see Riker v. Premier Capital, LLC*, 15-CV-8293, 2016 WL 5334980, at *5 (S.D.N.Y. Sept. 22, 2016) (citing cases and noting that "[w]hether negligent misrepresentation claims are always subject to Rule 9(b)'s heightened standard is a matter of greater debate"), there is little doubt that Rule 9(b) does apply where the claim sounds in fraud.

Only three allegations provide any hint of when the alleged misrepresentations were made, and those three simply allege conduct by Bernard J. "[p]rior to sale of the Property to Sanders, in January 2010." Am. Compl. ¶¶35-37. In addition to failing to indicate when misrepresentations were made, plaintiff utterly fails to allege where the occurrences happened, how the statements were conveyed, or who was present when any exchange occurred. Some allegations indicate that misrepresentations were allegedly made to Sanders, while others do not provide information regarding the recipient of the misinformation. To the extent the misrepresentations were made to Sanders directly, he aware of specific facts, such as when and where the statements were made, to state his claims with more specificity.

Moreover, plaintiff fails to allege facts that give rise to a strong inference of fraudulent intent by the Janowitz defendants. As discussed above, it is completely unclear what role Sammy J. played in these events. Bernard J., although allegedly not a principal of WB Kirby, signed the agreements on behalf of that entity, yet plaintiff claims he was not an owner or principal. As the nature of their relationship to plaintiff is not apparent, it is impossible to discern any motive for their allegedly fraudulent conduct.

The only allegations that arguably hint at motive are plaintiff's claims that the Janowitz defendants, along with WB Kirby, hid material defects to avoid remediation costs if variances were denied, Am. Compl. ¶88, and that each fraudulently induced plaintiff's purchase for his own "personal gain." *Id.* ¶¶60-61.[4] A "generalized motive to satisfy consumers' desires, [or to] increase sales and profits, 'does not support a strong inference of fraudulent intent.'" *In re Frito-Lay N. Am., Inc. All Natural Litig.*, No. 12-MD-2413, 2013 WL 4647512, at *25 (E.D.N.Y. Aug. 29, 2013) (quoting *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996)); *see also*

---

[4] In his memorandum in opposition to this motion, plaintiff states that the Janowitz defendants' intent was the "opportunity to earn additional brokerage and construction management fees for themselves." Mem. in Opp. at 24. These allegations do not appear within the amended complaint. Even if they had been identified as "brokers" or "construction managers" in the pleadings, this designation by itself is insufficient to support a strong inference of fraudulent intent given the conclusory nature of the allegations.

*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994) (noting that "[i]n looking for a sufficient allegation of motive, we assume that the defendant is acting in his or her informed economic self-interest"). Nor has plaintiff identified any circumstances indicating conscious behavior by the Janowitz defendants that could give rise to a strong inference of their fraudulent intent. Thus, plaintiff has failed to satisfy Rule 9(b) as to his claims against the Janowitz defendants.

## IV. CONCLUSION

For the above stated reasons, the Janowitz defendants' motion to dismiss is granted. Plaintiff is granted leave to replead consistent with this Order within twenty (20) days.

SO ORDERED.

_____
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
       November 14, 2017