UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
DOUGLAS H. SANDERS,

      Plaintiff,

  -against-

WB KIRBY HILL, LLC, and BERNARD M. JANOWITZ,

      Defendants.
-------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

**MEMORANDUM & ORDER**

**16-CV-4596 (NGG) (ARL)**

  Plaintiff Douglas H. Sanders brings this suit for breach of contract, fraud, and negligence related to his purchase of a home in the "Stone Hill" development ("Stone Hill"), located at 6 Kingwood Court, Muttontown, New York (the "Sanders Home"). (Second Am. Compl. (Dkt. 62) ("SAC").) Before the court are briefs by Plaintiff and Defendants WB Kirby Hill, LLC ("WBK") and Bernard Janowitz, in response to this court's sua sponte order (May 22, 2018 Order), regarding whether non-parties the Village of Muttontown (the "Village") and Plaintiff's title insurer should be joined as parties to this suit pursuant to Federal Rule of Civil Procedure 19. (Pl. May 31, 2018 Letter ("Pl. Mem.") (Dkt. 70); Def. WB Kirby Hill LLC June 11, 2018 Resp. ("WBK Resp.") (Dkt. 71); Def. Bernard Janowitz June 12, 2018 Resp. ("Janowitz Resp.") (Dkt. 72); Pl. June 12, 2018 Reply ("Pl. Reply") (Dkt. 73); Def. WB Kirby Hill LLC June 12, 2018 Sur-Reply ("WBK Sur-Reply") (Dkt. 74).) Also before the court is Plaintiff's motion for the undersigned to recuse himself from this case pursuant to 28 U.S.C. § 455(a). (Pl. Mot. for Recusal ("Recusal Mot.") (Dkt. 81).)

## I.   BACKGROUND

### A.   Factual Allegations

Plaintiff alleges that, in January 2010, Plaintiff met with a WBK agent, Joanne Miller, to explore the possibility of purchasing a vacant lot in Stone Hill. (SAC ¶¶ 4, 24, 26-27.) Miller showed Plaintiff one- and two-acre lots available for purchase. (Id. ¶ 27.) Plaintiff expressed interest in a larger version of a particular model home he was shown. (Id. ¶ 30.) Miller advised Plaintiff to meet with Stone Hill's "owner/developer," Janowitz. (Id. ¶ 31.) Plaintiff scheduled a January 29, 2010 meeting with Janowitz. (Id. ¶¶ 32-35.)

At that meeting, Janowitz allegedly represented that a 6,000-square-foot home could not be built on any of the one-acre lots and would need to be built on a two-acre lot. (Id. ¶ 40.) Plaintiff stated that he could not afford any of the two-acre lots. (Id. ¶¶ 41-43.) Janowitz then advised Plaintiff that one particular lot, Lot #64, was only 1.3 acres yet could accommodate the larger house Plaintiff desired, along with a pool and other amenities Plaintiff wanted. (Id. ¶¶ 44-46.) Janowitz also told Plaintiff that the larger house would "not present a problem with the Village" and that he would ensure WBK's compliance with the Village's building codes in supervising the construction of Plaintiff's house. (Id. ¶¶ 50, 103.)

Plaintiff avers that, in reliance on Janowitz's representations, he agreed to purchase Lot #64, signing a purchase agreement with WBK on February 23, 2010. (Id. ¶¶ 55-58; Purchase Agreement (Dkt. 62-1)).) That same day, Plaintiff signed a contract with WBK (the "Construction Agreement") to build the Sanders Home on the land. (SAC ¶ 61; Construction Agreement (Dkt. 62-2).) Plaintiff paid WBK over $1,930,000 for services performed pursuant to the Construction Agreement. (SAC ¶¶ 121-22.) The Construction Agreement provided, and Janowitz represented, that WBK would build the Sanders Home in accordance with the

provisions of the Stone Hill at Muttontown Community Offering Plan (the "Offering Plan").

(Construction Agreement ¶ 23; SAC ¶ 107.) Plaintiff alleges that WBK failed to do so and that

WBK violated the Village's building codes, rules, and regulations in building the Sanders Home.

(SAC ¶¶ 104-107.) WBK purported to deliver a "Certificate of Occupancy" to Plaintiff on or

about September 21, 2011. (Id. ¶ 124.)

Plaintiff lived in the Sanders Home from March 2011 to August 2014 before moving to

Puerto Rico. (Id. ¶ 125.) During that time, he installed a patio and pergola in the rear of the

home, and also "installed landscaping." (Id. ¶ 126.) In late 2014, Plaintiff tried to sell the

Sanders Home, and the purchaser told him that the purchaser's title company required Plaintiff to

obtain approval from the Village's building department for the patio, pergola, and landscaping.

(Id. ¶¶ 129-131.) After Plaintiff applied for a building permit, the Village issued a comment

letter dated April 2, 2015 (the "2015 Comment Letter"), indicating that various conditions of the

Sanders Home violated both the Village's building codes and the provisions of the Offering Plan

that had been filed with the Village. (Id. ¶¶ 132-37.) Plaintiff claims that he did not have notice

of these defects until receiving the April 2, 2015 comment letter. (Id. ¶ 161.) The Village

required Plaintiff to correct the Sanders Home's improper conditions, which forced Plaintiff to

terminate its potential sale of the home. (Id. ¶ 145.) On July 26, 2016, the Village issued

another comment letter (the "2016 Comment Letter") indicating the Sanders Home exceeded the

maximum building height and required a variance. (Id. ¶ 146.) Plaintiff claims that these

comment letters have substantially reduced the value of the Sanders Home, rendered it

unmarketable for sale, and have caused Plaintiff to incur significant damages. (Id. ¶¶ 163-72.)

These comment letters allegedly resulted from WBK's failure to comply with the Village's

building codes and the Offering Plan. (Id.)

Rather than appealing the 2015 and 2016 Comment Letters, Plaintiff obtained variances from the Village. (See Pl. Mem. at 6; WBK Resp. at 8-9; Pl. Reply at 3.) To explain this, Plaintiff notes that he "has had [the 2015 Comment Letter] independently tested, and found that the objections raised by the Village are valid." (Pl. Mem. at 6.) WBK contends that the 2015 Comment Letter was erroneous and inconsistent with the Certificate of Occupancy the Village issued in 2011. (WBK Resp. at 6-8.)

## B.     Procedural History

Plaintiff filed this suit on August 17, 2016. (Compl. (Dkt. 1).) The case was originally assigned to District Judge Leonard B. Wexler and Magistrate Judge Arlene R. Lindsay. Plaintiff amended his complaint twice, filing the most recent version on December 4, 2017. (SAC.) In his most recent complaint, Plaintiff brings claims against WBK for breach of contract and Bernard Janowitz for fraudulent inducement and negligent misrepresentation. (SAC ¶¶ 173-99.) After Judge Wexler's death, the case was reassigned to Judge Spatt on April 9, 2018, and then reassigned to this court on May 2, 2018.

On May 22, 2018, this court held a pretrial conference, after which the court rejected the parties' proposed joint pretrial order because it did not comply with the court's Individual Rules. (May 22, 2018 Order.) The court also directed the parties to brief the issue of whether the Village and Plaintiff's title insurer should be joined as parties to this suit pursuant to Federal Rule of Civil Procedure 19. (Id.) The parties have since done so. (Pl. Mem.; WBK Resp.; Janowitz Resp.; Pl. Reply; WBK Sur-Reply.) Defendants contend that the Village is a necessary party and, further, that this suit should be dismissed as unripe for adjudication because Plaintiff was required to appeal the 2015 Comment Letter to the Village's Zoning Board of Appeals ("ZBA") before bringing this suit. (WBK Resp. at 2, 15; Janowitz Resp. at 1 (joining WBK's

arguments).) Defendants note that the 2015 Comment Letter conflicts with the Village's approvals of the Sanders Home in 2011. (WBK Resp. at 2.) WBK states that, "[b]y failing to name the Village in this lawsuit and by commencing this lawsuit without challenging the Building Department's 2015 findings, Plaintiff has tasked this Court, without the benefit of a record, with the initial review and determination of the Building Inspector's 2015 findings." (Id.) In Defendants' view, Plaintiff could have brought this suit—naming the Village as a defendant—only after the ZBA resolved Plaintiff's appeal. (WBK Resp. at 15; Janowitz Resp. at 1.)

Plaintiff has also requested a pre-motion conference in anticipation of moving for a pre-judgment order of attachment against WBK pursuant to Article 62 of the New York Civil Practice Law and Rules. (Pl. Jan. 17, 2019 Appl. For Pre-Mot. Conf. (Dkt. 77).) The court granted Plaintiff's request and directed the parties to delay scheduling the conference until after entry of the court's order regarding the Rule 19 issue. (Jan. 29, 2019 Order.)

Plaintiff has also moved for the undersigned to recuse himself from this case pursuant to 28 U.S.C. § 455(a). (Recusal Mot.) In Plaintiff's view, the court "has created an appearance of partiality, non-neutrality, and bias" by (1) asking the parties, sua sponte, to brief the Rule 19 issue addressed above; (2) not issuing a decision on this question for several months; and (3) not granting Plaintiff's requests to schedule a pre-motion or pre-trial conference in the interim. (Pl. Mem. in Supp. of Mot. for Recusal ("Recusal Mem.") at 5-7.) According to Plaintiff, "this case was taken out to the proverbial woodshed and left there to rot." (Recusal Mem. at 6.)

## II. DISCUSSION

### A. Whether the Village and Plaintiff's Title Insurer Should be Joined Pursuant to Rule 19

#### 1. Legal Standard

> Under Rule 19, a party is necessary where (1) complete relief may not be effected among those already parties in the person's absence; or (2) the absent party claims some interest relating to the subject matter of the action and their absence would either impair the absent party's ability to protect that interest or leave persons already parties subject to substantial risk of incurring multiple or inconsistent obligations as a result of the claimed interest.

Bodner v. Banque Paribas, 114 F. Supp. 2d 117, 137 (E.D.N.Y. 2000) (citing Fed. R. Civ. P. 19(a)); accord ConnTech Dev. Co. v. University of Connecticut Educ. Props., Inc., 102 F.3d 677, 681 (2d Cir. 1996). The burden is on Defendants "to show that the person who was not joined is needed for a just adjudication." 7 Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1609 (3d ed.); see, e.g., Bodner, 114 F. Supp. 2d at 137.

#### 2. Application

##### a. Plaintiff's Title Insurer

Plaintiff's title insurer is not a necessary party to this case. According to Plaintiff, his insurer insured him only with respect to his purchase of the land itself, not to the Construction Agreement to build the Sanders Home on the land. (Pl. Mem. at 5-6.) Plaintiff's claims do not relate to the purchase of the land itself, but rather the Construction Agreement. (See SAC ¶¶ 163-72). Thus, complete relief may be effected among the parties in the insurer's absence, and the insurer's absence would not impair its ability to protect its interest in the land or leave the parties subject to risk of multiple or inconsistent obligations. See Fed. R. Civ. P. 19(a)(1). Defendants do not dispute this.

### b. *The Village*

Nor is the Village a necessary party. Plaintiff alleges no wrongdoing by the Village. (See Pl. Mem. at 6.) Instead, Plaintiff contends that WBK and Janowitz are at fault for breaching the Construction Agreement by building the Sanders Home in violation of the Village's building codes and the Offering Plan, contrary to their prior representations to Plaintiff. (See id.; Reply at 2-3.) In other words, this case is about an alleged breach of a contract between Plaintiff and WBK and Janowitz's representations that allegedly induced Plaintiff to enter the contract. "A nonparty to a commercial contract ordinarily is not a necessary party to an adjudication of rights under the contract." ConnTech, 102 F.3d at 682 (quoting Northrop Corp. v. McDonnell Douglas Corp., 705 F.2d 1030, 1044 (9th Cir. 1983). "This rule is not inapplicable merely because the absent party happens to be the Government." Id. (quoting Northrop Corp., 705 F.2d at 1044). Defendants are free to sue the Village, or to argue that they should not be held liable because the 2015 Comment Letter was erroneous or because they relied in good faith on the Certificate of Occupancy that the Village issued in 2011. (See WBK Resp. at 2; WBK Sur-Reply at 1-2.) But that does not require the Village to be joined as a party under Rule 19.

The authorities cited by Defendants do not indicate otherwise. First, WBK relies on Sprayregen v. A. Gugliotta Dev., Inc., 166 F. Supp. 3d 291 (E.D.N.Y. 2016), in which the court stated that "the issuance of a certificate of occupancy establishes that the premises are in compliance with the requirements of the building code and other applicable laws." Id. at 310 (citation omitted). Sprayregen is not relevant to the issue before the court because Rule 19 was not at issue in that case; in fact, the municipality that issued the certificate of occupancy was not a party. See id. Second, WBK points to cases involving suits against municipalities for the proposition that, prior to bringing this suit, Plaintiff was required to appeal the 2015 Comment

Letter to the Village's Zoning Board of Appeals ("ZBA"). (WBK Resp. at 2, 10 (citing, inter

alia, Murphy v. New Milford Zoning Com'n, 402 F.3d 342 (2d Cir. 2005); Natale v. Town of

Ridgefield, 170 F.3d 258 (2d Cir. 1999); Kowalczyk v. Barbarite, No. 08-CV-69928 (ER), 2012

WL 4490733 (S.D.N.Y. Sept. 25, 2012); Norton v. Town of Islip, 239 F. Supp. 2d 264 (E.D.N.Y.

2003); Charest v. Morrison, 852 N.Y.S.2d 503 (N.Y. App. Div. 2008). In each of those cases,

the plaintiff either claimed that a municipality violated his or her constitutional rights, Murphy,

402 F.3d at 350; Natale, 170 F.3d at 259; Kowalczyk, 2012 WL 4490733, at *1, 7; Norton, 239

F. Supp. 2d at 266, or sought to compel a municipality to revoke a building permit it had issued

to a third party, Charest, 852 N.Y.S.2d at 1179. In other words, the plaintiffs were seeking

redress for an action taken by the municipality. Here, Plaintiff does not complain about anything

the Village did; he complains about Defendants' actions. (See Pl. Mem. at 6; Pl. Reply at 7.)

**B.     Motion for Recusal**

1.     <u>Legal Standard</u>

"A judge must recuse himself 'in any proceeding in which his impartiality might

reasonably be questioned.'" In re Basciano, 542 F.3d 950, 956 (2d Cir. 2008) (quoting 28 U.S.C.

§ 455(a)). "[R]ecusal motions are committed to the sound discretion of the district court."

United States v. Lovaglia, 954 F.2d 811, 815 (2d Cir. 1992), overruled on other

grounds by, United States v. Yousef, 750 F.3d 254, 261 (2d Cir. 2014). "[T]he mere filing of a

recusal motion does not automatically require the recusal of a judge." Williams v. City Univ. of

N.Y., 633 F. App'x 541, 544 (2d Cir. 2015) (summary order). "The relevant inquiry is whether

an objective, disinterested observer fully informed of the underlying facts, would entertain

significant doubt that justice would be done absent recusal, or alternatively, whether a reasonable

person, knowing all the facts, would question the judge's impartiality." Williams, 633 F. App'x

at 543 (2d Cir. 2015) (quoting Yousef, 327 F.3d at 169) (alteration adopted) (quotation marks omitted)).

"[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." Liteky v. United States, 510 U.S. 540, 555 (1994); see Gallop v. Cheney, 645 F.3d 519, 521 (2d Cir. 2011) (finding that a ruling made against the plaintiff "alone is insufficient to establish the sort of extreme antagonism required for disqualification"); Chen v. Chen Qualified Settlement Fund, 552 F.3d 218, 227 (2d Cir. 2009) (per curiam) ("Generally, claims of judicial bias must be based on extrajudicial matters, and adverse rulings, without more, will rarely suffice to provide a reasonable basis for questioning a judge's impartiality."). Judicial rulings "can only in the rarest circumstances evidence the degree of favoritism or antagonism required" for recusal to be necessary. Liteky, 510 U.S. at 555. "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Id.

2.      Discussion

Plaintiff has not offered any persuasive reason why the court should recuse itself. Ordering the parties to brief a procedural issue sua sponte is a judicial ruling, which "alone is insufficient to establish the sort of extreme antagonism require for disqualification." Gallop, 645 F.3d at 521. If an adverse ruling is not cause for recusal, see, e.g., id., it follows logically that the court's failure to rule on the Rule 19 issue as quickly as Plaintiff may have liked is also not a basis for recusal. And while the Rule 19 issue was pending, the court did not address all of Plaintiff's repeated requests for another pretrial conference because there was no reason to hold such a conference before ruling on the Rule 19 issue. This would not cause a reasonable

observer to question the judge's impartiality or to "entertain serious doubt" about whether

"justice [can] be done absent recusal." See Williams, 633 F. App'x at 543.

The court thus declines to recuse itself from this case.

## III. CONCLUSION

The court finds that non-parties the Village of Muttontown (the "Village") and Plaintiff's

title insurer are not required parties to this action under Federal Rule of Civil Procedure 19.

Additionally, Plaintiff's (Dkt. 81) motion for recusal is DENIED. The court declines to schedule

a pre-motion conference (see Pl. Req. for Pre-Mot. Conf. and Pre-Trial Conf. (Dkt. 79)) and

DIRECTS to submit to this court a proposed briefing schedule for Plaintiff's anticipated motion

for a pre-judgment order of attachment by no later than June 7, 2019.

The court will seek to reassign this case to a Brooklyn magistrate judge to coordinate

pretrial procedures. After the reassignment, the parties are DIRECTED to contact the newly

assigned magistrate judge's chambers to schedule a Rule 16 conference and to work with the

magistrate judge to prepare a revised joint pretrial order that complies with the court's individual

rules.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      June 4, 2019

NICHOLAS G. GARAUFIS
United States District Judge